IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
(SOUTHERN DIVISION)

| | |
|---|---|
| RICHARD D. EDWARDS, JR., individually and as personal representative of the Estate of Christy Leigh Edwards, | ) ) ) ) ) |
| PLAINTIFF, | ) ) |
| v. | ) ) CASE NO. 1:19-CV-57-SRW |
| SCHUMACHER CLINICAL PARTNERS SUBSIDIUM HEALTHCARE, LLC; SCHUMACHER CLINICAL MEDICAL CORPORATION OF ALABAMA, INC.; and THE SCHUMACHER CLINICAL GROUP OF LOUISIANA, INC. | ) ) ) ) ) ) ) ) ) ) |
| DEFENDANTS. | ) |

## COMPLAINT

### THE PARTIES, THE PLAN and VENUE

1.     The Plaintiff, Richard D. Edwards, Jr. (referred to as Mr. Edwards) is the surviving spouse of Dr. Christy Leigh Edwards, and the personal representative of the Estate of Christy Leigh Edwards.

2.     Dr. Edwards worked as an emergency room doctor in Enterprise, Alabama. She lived with her husband in Coffee County, Alabama, along with their three children. She tragically died in an automobile accident on May 6, 2018.

3.     The Defendants, collectively referred to as Schumacher Clinical at all places in this complaint, employed Alabama physicians to provide emergency room services in the State of Alabama at all relevant times. These Defendants are jointly and/or severally liable for all relief demanded in this complaint.

4.     Dr. Edwards, upon Plaintiff's information and belief, was an employee of Schumacher Clinical, which appears to be a trade name utilized by one or all of the Defendants. Schumacher Clinical provided various benefit plans to its employees including life insurance.

5.     Dr. Edwards was a participant in a life insurance welfare plan provided by one or all of the Defendants.  Her husband was the beneficiary of her life insurance benefits.

6.     Schumacher Clinical was the plan administrator and owed fiduciary duties to all plan participants and beneficiaries including Dr. Edwards and her husband. Schumacher Clinical had acquired control of the physicians' group in which Dr. Edwards practiced and had all plan administrator duties for life insurance benefits.

7.     Schumacher Clinical is, upon information and belief, a collection of companies in the business of providing medical services and employment with benefits for medical staff and professionals all over the United States.  These companies do business by agent or otherwise in the state of Alabama.

8.      This welfare plan, all claims made thereunder, and all breaches of duty are governed by the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. §1001, *et seq.*

9.      Venue in this case is proper where Schumacher Clinical may be found, which is inclusive of the Middle District of Alabama.  Further venue is proper where Dr. Edwards performed her occupation in Enterprise, Alabama, and where she and her husband resided.

## FACTS COMMON TO ALL COUNTS

10.     Dr. Edwards maintained life insurance on her life for several years through her benefit package with Schumacher Clinical.  This life insurance benefit had been in effect for at least three (3) years through her employer with $300,000 in life insurance coverage and $1,000,000 in accidental death and dismemberment coverage.

11.     Schumacher Clinical has asserted that it made certain benefit changes periodically. In such event, it had an obligation to inform plan participants, including Dr. Edwards, of such changes.

12.     Dr. Edwards and her husband owned a rental property on the Gulf of Mexico, which was subject to a mortgage. The loan application required that Dr. Edwards disclose life insurance which was in place in the event of her death. For three years, Dr. Edwards entered the same amount of insurance, which she had in place through

her employer on a personal financial statement that was submitted to the bank providing a loan for the property,

13.    In March 2018 the bank required another personal financial statement. Dr. Edwards contacted the Benefit Information Center for Schumacher Clinical by telephone, less than two months before she died, to obtain information on her life insurance. Schumacher Clinical's Benefits Advocate, which was the entity all participants were directed to contact, verified the life insurance coverage was with Metropolitan Life Insurance Company (MetLife), the same company that was in place in a prior year, continued to insure Dr. Edwards. The call was tape recorded.

14.    Dr. Edwards had been trying to get into the benefits portal to obtain the information herself but was unable to do so and had to rely on the telephone call. After Schumacher Clinical verified that Dr. Edwards had both life insurance and accidental death insurance, Dr. Edwards relied on this information and reported it on the personal financial statement which was submitted to the bank.

15.    Had Dr. Edwards been informed that Schumacher Clinical had terminated all life insurance, she would have ben able to put in place other life insurance.

16.    Dr. Edwards was tragically killed in a motor vehicle accident on May 6, 2018 at the age of 49. The estate of Dr. Edwards is being probated, and Mr. Edwards has been appointed the personal representative of her estate.

17.   Schumacher Clinical was notified of the death of Dr. Edwards and requests were made to provide forms to make a claim, and to provide plan documents and other pertinent information.

18.   In response to this notification, Schumacher Clinical advised that no welfare benefits were offered to the physician partners, but then later changed its assertion and stated that it had terminated life insurance benefits for Dr. Edwards on December 31, 2017. Thus, it contended there was no such coverage. It represented further that it had provided notice of the termination of coverage to all participants affected, including Dr. Edwards.

19.   This representation regarding notice of life insurance termination was false, as no written or electronic notice was ever provided to Dr. Edwards regarding termination of life insurance benefits. Further Schumacher Clinical also knew there was a technical support claim made by Dr. Edwards and that she was not receiving electronically furnished information. A case number (01061653) had been assigned by Schumacher Clinical to this matter in March 2018.

20.   Schumacher Clinical knew it had an obligation to properly train benefits personnel and maintain truthful information on its portal.

21.   Mr. Edwards presented life insurance claims to several different insurers, all of which confirmed no coverage existed including MetLife.

22.     A request for all MetLife plan documents was made on Schumacher Clinical on July 13, 2018, given the call transcript specifically noted that coverage was in place. No plan documents were furnished.

23.     Mr. Edwards and his wife were relying on the life insurance to help pay financial obligations. This included paying for the education of their children, the mortgage on the family home and the horse farm, and a loan on a rental property in the event of a tragedy. Mr. Edwards and his children have been placed in financial difficulty, and have suffered financial losses, frustration and mental anguish regarding the lack of forthcoming information as to plan documents and misinformation.

24.     Mr. Edwards, in discussing this circumstance with other staff and co-employees of his wife, confirmed that others were also affected by Schumacher Clinical's mishandling of benefit information and management of benefits.  He desired to have counsel talk to the other physicians in his wife's group. Schumacher Clinical claimed to represent all co-employees of Dr. Edwards and barred all contact. It further refused to arrange for such contact with Schumacher Clinical counsel present.

25.     Schumacher Clinical contended Dr. Edwards had notice of the life insurance plan termination and that she overlooked the notices and/or had been negligent in handling her own affairs.  Mr. Edwards believed the other co-employees would

confirm this was also information. Schumacher Clinical's refusal to permit contact and deal honestly, added to Mr. Edwards' anguish. Mr. Edwards also sought to help other participants and beneficiaries before it was too late for them, given Schumacher Clinical breached fiduciary duties which might affect others.

26.     As a result of these false assertions, Mr. Edwards spent well over 200 hours poring over his wife's email accounts, reviewing documents and investigating this matter as personal representative of Dr. Edwards' estate, only to verify that never once was a notice provided that life insurance was being terminated. Dr. Edwards was also never given notice of any conversion rights for the life insurance that was allegedly terminated. The assertions of Schumacher Clinical were consistently false and misleading.

27.     Due to the repeated false statements of Schumacher Clinical, and its refusal to engage in meaningful disclosure of information, it is futile to engage with Schumacher Clinical in any further efforts to rectify this matter. It has betrayed its fiduciary duties which is the highest duty known under the law, and it refuses to right the wrongs it has committed.

28.     The actions of Schumacher Clinical deprived Mr. Edwards of a benefit claim as, despite its misrepresentations of life insurance coverage, it had terminated all life insurance without notice, and further failed to provide conversion notice rights at the time of its alleged termination of benefits.

29. Further, Mr. Edwards has experienced mental anguish, insult and grief over the misinformation and false statements of Schumacher Clinical. He further suffered mental anguish caused by the financial distress in which he was placed due to the lack of an insurance benefit. He is being forced to accelerate the sale of horses from the family farm distressing his children. This further has caused him mental anguish as he knows this is against the express wishes of his wife which she had previously made known to him. This accelerated sale includes his wife's show horse which has distressed Mr. Edwards and his children, as that was her pride and joy. He had to place his rental property on the market to sell.

30. Equitable relief is necessary to make Mr. Edwards whole regarding these losses and to create incentive for Schumacher Clinical to mend its ways, and fully honor its fiduciary duties as to other employees.

31. The United States Supreme Court in CIGNA Corp. v. Amara, 563 U.S. 421, 442, 131 S. Ct. 1866, 1880, 179 L. Ed. 2d 843 (2011) has permitted various forms of relief for breaches of fiduciary duties inclusive of restitution, "make whole" relief, and surcharge. Mr. Edwards seeks such relief. The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

32. The refusal or failure of Schumacher Clinical to provide MetLife plan documents has further prejudiced Mr. Edwards in confirming the life insurance

- 8 -

benefit amounts at stake.  Schumacher Clinical has provided no claim process or procedures to exhaust fiduciary duty claims despite repeated requests for such information.

33.     All claims have thus been exhausted and/or deemed exhausted and further exhaustion is futile given the refusal to conduct a full and fair review.

## COUNT I

34.     The Plaintiff incorporates by reference all previous paragraphs as if set forth here in full.

35.     This Count is brought pursuant to 29 U.S.C. § 1132 (a)(3).

36.     Schumacher Clinical and/or agents or employees acting on its behalf made false material statements as noted above.

37.     Schumacher Clinical also had a duty to provide life insurance policies in the state of Alabama which agreed to provide notice of the right conversion of group life insurance to all Alabama plan participants.  Schumacher Clinical also had a duty to provide this notice to all plan participants, when terminating any group life insurance benefit.

38.     Schumacher Clinical breached these duties, and then made further false representations adding insult to the injury it caused Mr. Edwards.

**WHEREFORE,** the premises considered, Plaintiff seeks equitable relief as allowed by law and for specific equitable relief under 29 U.S.C. § 1132 (a)(3) as follows:

    a. For a surcharge remedy to make Mr. Edwards whole by requiring Schumacher Clinical to pay the amount of MetLife life insurance Dr. Edwards believed she had in place, in reliance upon the misrepresentations of Schumacher Clinical and given MetLife now contends no such coverage was in place;

    b. For restitution to Mr. Edwards in having to incur expense, and suffer financial losses in connection with the marital home, the family horse farm, and rental property due to the lack of a life insurance benefit to fund such matters;

    c. For reimbursement of the value of time incurred by Mr. Edwards in investigating this matter;

    d. For interest on all restitution and surcharge payments made, going back to 30 days after the death of Dr. Edwards;

    e. For an award of attorney's fees, costs of this action, and case expenses;

    f. For such other equitable relief as the Court may provide and find to be just and proper.

## COUNT II

39.   The Plaintiff incorporates by reference all previous paragraphs as if set forth here in full.

40.   The Plaintiff seeks penalties under 29 U.S.C. § 1132(c) against Schumacher Clinical, an administrator, for wrongful refusal to provide information requested and as required by ERISA and relevant regulations.

41.   In particular, on July 13, 2018, Mr. Edwards requested the Schumacher Clinical Defendants to produce a copy of the summary plan description and all plan documents relating to life insurance benefits inclusive of the plan in effect when MetLife insured Dr. Edwards.

42.   Schumacher Clinical did not respond to this request.

43.   This failure prejudiced Mr. Edwards in not knowing where he stood financially and caused further frustration and anxiety.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants as follows:

a.   For an award of penalties of $110.00 per day for each day the Defendants did not respond to information for which they were required to respond;

b.   For an award of attorney's fees;

c.   For such other further equitable and proper relief as may be just under 29 U.S.C. § 1132(c).

David P. Martin (ASB-3500-M68D)
M. Clayborn Williams (ASB-9101-A43M)
Attorneys for the Plaintiff
THE MARTIN LAW GROUP, LLC
P.O. Box 20087
Tuscaloosa, AL  35402
Phone: (205) 343-1771
Facsimile: (205) 343-1781
david@erisacase.com
clay@erisacase.com

**Plaintiff's Address:**

Richard D. Edwards, Jr.
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendants' Addresses:**

Schumacher Clinical Partners Consulting Services Subsidium Healthcare, LLC
200 Corporate Blvd
Lafayette, LA 70508

Schumacher Clinical Medical Corporation of Alabama, Inc.
Agent for Service of Process
CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL  36104

The Schumacher Clinical Group of Louisiana, Inc.
Agent for Service of Process
CT Corporation System
3867 Plaza Tower Drive
Baton, Rouge, LA 70816

*Defendants to be Served by Notice of Lawsuit and Request for Waiver of Service*